· CASE 80.—PROSECUTION AGAINST THE INTERNATIONAL HARVESTER COMPANY OF AMERICA FOR VIOLATING THE ANTI-TRUST LAW.—March 15, 1910.

## International Harvester Co. of America v. Commonwealth

Appeal from Logan Circuit Court.

W. P. SANDIDGE, Judge.

Defendant convicted and appeals.—Reversed.

1. Monopolies—Statutes—Constitutionality.—Act May 20, 1890, (Acts 1889-90, c. 1621; Ky. St. section 3915), known as the "anti-trust act" is not unconstitutional when construed with Act March 21, 1906, (Acts 1906, c. 117; Ky. St. section 3941a), known as the "pooling act."
2. Monopolies—Restraint of Trade—Criminal Prosecution.—The gist of the offense denounced by Ky. St. section 3915, against pooling is that the purpose of the pool is to enhance the price of the article pooled above its real value; and, where such is the design, or is the natural effect of the poolers' acts, the offense is complete.
3. Criminal Law—Jurisdiction of Offense—Restraint of Trade —Criminal Prosecution.—If the pooling conspiracy as denounced by Ky. St. section 3915, is entered into outside of the state, the fact of such conspiracy, whatever its purpose, is not punishable in this state, but if the conspirators in furtherance of their scheme carry it into effect within the state, the offense is there committed.

International Harvester Co. of America v. Commonwealth.

4.  Indictment and Information—Restraint of Trade—Criminal Prosecution—Joinder of Persons.—The persons forming a pooling combination in restraint of trade, in violation of Ky. St. section 3915, may be indicted either jointly or severally, or, if they combine under a corporate name, and the corporation executes the contract of combination, then the corporation may be indicted either alone or jointly with those, or any of them, entering into the conspiracy.

5.  Monopolies—Restraint of Trade—Criminal Prosecution—Persons Liable.—Though the corporation organized for the purpose of executing a pooling agreement between several corporations, in violation of Ky. St. section 3915. was not organized at the time the agreement was made, it becomes a party to the unlawful agreement when it undertakes to execute the same, and is answerable for the acts of the promoters in conceiving or entering into it.

6.  Monopolies—Restraint of Trade—Criminal Prosecution—Indictment.—An indictment, alleging a conspiracy among companies for the purpose of enhancing the price of harvesting machinery above its real value, and that such a conspiracy was consummated within the jurisdiction of the forum, by the market value of those articles being so enhanced there, within a year before the finding of the indictment, and as the natural and proximate result of the conspiracy, charges an offense within Ky. St. section 3915, against pooling combinations.

7.  Monopolies—Restraint of Trade—Criminal Prosecution—Evidence.—In a prosecution for an alleged combination for the purpose of enhancing the price of harvesting machinery, in violation of Ky. St. section 3915, against pooling, where there is evidence that the price charged for such machinery has enhanced 5 per cent. since the formation of the alleged combination, defendant may show that the price of materials and labor has also increased more than 5 per cent. during the same period.

8.  Monopolies—Restraint of Trade—Criminal Prosecution—Evidence to Sustain.—Where the prosecution for the violation of Ky. St. section 3915, denouncing pooling, shows that there has been a combination among the producers of a commodity, by which its output is restricted or controlled alone by the combination; that the market price of the commodity was then materially enhanced; that the conditions affecting commerce in general are normal; and that the competition otherwise than for the combination complained of would be fair—a prima facie case is made.

9.  Monopolies—Restraint of Trade—Criminal Prosecution—
    Burden of Proof.—In a prosecution for a violation of Ky. St.
    section 3915, against pooling, it is necessary for the common-
    wealth to show an increase in the price of the commodity in
    question, that the general conditions affecting the market
    were normal, and that but for the combination complained of
    the competition would be natural and usual; and the burden
    then shifts to the defense to show such exceptional condi-
    tions affecting such commodity as naturally tends to cause
    the increase in price.
10. Criminal Law—Venue—Locality of Offense—Restraint of
    Trade.—The formation outside of the county of an unlawful
    combination for the purpose of raising the price of a com-
    modity is not an offense within the jurisdiction of the county,
    unless the offense is consummated there by selling the com-
    modity at more than its real value.

ARTHUR M. RUTLEDGE and BROWDER & BROWDER for
appellant.

JAS. BREATHITT attorney general and TOM B. McGREGOR
assistant attorney general for the Commonwealth.

OPINION OF THE COURT BY JUDGE O'REAR—Revers-
ing.

Appellant, a foreign corporation, was indicted at
the May term, 1909, of the Logan circuit court,
charged with a violation of section 3915, Ky. St.
(Russell's St. sec. 3717), which is the act of May 20,
1890 (Acts 1889-90, c. 1621), commonly known as the
"anti-trust statute." At the September term follow-
ing a trial was had, resulting in a verdict of guilty;
the penalty being fixed at a fine of $2,200. From
the judgment entered upon that verdict this appeal
is prosecuted. Appellant urges as error: (1) That
the indictment fails to charge the commission of any
public offense, in that: (a) The act of 1890, under
which indictment was framed, has been repealed by
the subsequent act of March 21, 1906 (Acts 1906, c.
117), being section 3941a, Ky. St. (Carroll's), and

generally known as the "pooling act." Appellant contends that by the latter act all pools, combinations, and trusts in Kentucky are legalized. (b) If that position be not sound, then it is urged that the indictment fails to charge any violation of its provisions. (2) If the two positions stated above are decided adversely to appellant, it then contends that there was not any evidence of its guilt. and that the trial court should have so instructed the jury. Appellant assigns also that the court erred in rejecting material and competent evidence offered on its behalf.

On the first proposition advanced by appellant we content ourselves by saying that the question was fully considered in the case of Commonwealth v. International Harvester Company, 131 Ky., 551, 767, 155 S. W. 703, and the opinion there rendered disposed, so far as the court is concerned, of the objections now urged against the constitutionality of the act of May, 1890, as it is affected by the act of March, 1906. We adhere to the construction there placed upon the statutes, and the Constitutions of Kentucky and of the United States, so far as involved therein.

The indictment in this case is in these words: "The grand jury of the county of Logan, in the name and by the authority of the Commonwealth of Kentucky, accuse the International Harvester Company of America of the offense of unlawfully and willfully creating, establishing, organizing, entering into, and becoming a member of and party to a pool, trust, combine, agreement, confederation, and understanding with other corporations, partnerships, individuals, persons, and associations of persons, for the purpose of regulating, controlling, and fixing the price of mer-

chandise, manufactured articles and property of another kind, and for the purpose of enhancing the value of the articles named in the indictment above their real value, and entering into an agreement, contract, understanding, combination, and confederation to fix and limit the amount and quality of articles of property, commodities, and merchandise to be produced, manufactured, and sold, committed as follows, to-wit: The said International Harvester Company of America heretofore, within one year before the finding of this indictment, did in the county of Logan and state of Kentucky unlawfully and willfully enter into a combination, confederation, pool, trust, combine, agreement, contract, and understanding with the McCormick Harvester Company, the Deering Harvester Company, the Milwaukee Harvester Machine Company, D. M. Osborne Company, and the Plano Machine Company, some of which are corporations and some joint-stock companies, but the jury cannot say which are stock companies and which are corporations, nor who constitute members of any joint-stock company, nor in what state those being corporations are incorporated, and other companies and corporations and individuals to the grand jury unknown, for the purpose of regulating and controlling and fixing the price of harvesting and farm machinery, reapers, mowers, rakes, binders, and repairs of same manufactured by said parties, and to be produced and manufactured by them, whereby it was agreed between said International Harvester Company of America and said other companies and corporations hereinbefore mentioned, and other corporations, companies, and individuals to the grand jury unknown, that they would regulate, control, and fix the price of machinery, commodities, and merchan-

dise, to-wit, said farm machinery, reapers, rakes, mowers, and binders, and other machinery to ·be produced and manufactured by said International Harvester Company of America, and other companies and individuals and corporations herein mentioned, and unknown to this jury, and bought and sold by them; that they also entered into a confederation, agreement, pool, trust, combine, and understanding to limit the amount and quality of said machinery and merchandise to be produced and manufactured and bought and sold by said International Harvester Company of America, and said other companies, and individuals to the grand jury unknown, herein mentioned, and for the purpose of enhancing the articles named in the indictment above their real value; that in pursuance of said agreement, confederation, pool, trust, combine, and understanding said International Harvester Company of America, and said other companies and corporations and individuals unknown to the grand jury, herein mentioned, did before the finding of the indictment in said county of Logan regulate, control, and fix the price of farm machinery, reapers, mowers, and binders, produced, manufactured, bought, and sold by said International Harvester Company of America, and other companies, corporations, individuals, and parties to the grand jury unknown aforesaid, and did limit the amount and quantity of said property to be produced and manufactured, to be bought and sold by said International Harvester Company of America, and the other parties hereinbefore named, and did limit the quantity of said merchandise and machinery produced, and did fix the price of same sold in said county above their actual value, and did advance the price above the real and actual value; that the said International

vol. 137—43

Harvester Company of America took over all machinery manufactured and to be produced and manufactured, by said other companies, corporations, and individuals hereinbefore named and unknown to the grand jury, and did fix and limit the amount and quantity of said articles to be produced and manufactured, and did fix and limit the amount of same to be bought and sold, and did fix and limit the prices at which said property hereinbefore mentioned should be bought and sold. The said International Harvester Company, the Deering Harvester Company, the Milwaukee Harvester Company, D. M. Osborne Company, and other companies herein unknown to the grand jury, are all corporations or joint-stock companies organized under the laws of what states they are incorporated or organized are unknown to the grand jury. Done as aforesaid, and against the peace and dignity of the commonwealth of Kentucky.''

The gist of the offense denounced by our statutes against pooling is that the purpose of the pool is to enhance the value of the article pooled above its real value. Where the design of the poolers is to so enhance the value of their product, or where, whatever their design, such is the natural effect of their action, and such as was necessarily foreseen because of its obviousness, the offense is completed. A party is presumed to have intended a result which is the logical and usual outcome of his willful act. If the conspiracy (and such the act is denominated by the statute) is entered into beyond the jurisdiction of Kentucky, the fact alone of such conspiracy, whatever its purpose, is not punishable in this state. But if the conspirators, in furtherance of their scheme, carry it into effect in Kentucky, that moment the offense is commit-

ted here.   The conspiracy, wherever and whenever
entered into, becomes the efficient cause of a result
in this state, the culmination of which rounds out a
completed act, beginning with the conspiracy to raise
prices above their real value, and ending with the
accomplishment of that purpose.   It is one continu-
ous act.   It is like the case where the shot being fired
from without the state takes effect in the state, re-
sulting in homicide.   The actor may be without the
jurisdiction of the courts of this state, and so was
his act alone in discharging his gun, but when the
result in this state constitutes an offense here, the
whole transaction, being necessarily one act, is cog-
nizable by the courts of this state as if every part of
the act transpired here.   So it is not material where
the conspiracy was entered into, if the fact to be in-
vestigated is the result.   It is relevant to prove, and
it may be necessary to prove the fact of the conspir-
acy.   That may be done either by witnesses who
heard it, or who produce documentary evidence of it,
or by circumstances from which it may be inferred.
The conspirators may, of course, be indicted jointly
or severally.   Or, if they combine under a corporate
name, and the corporation executes the purpose of
the conspiracy, then the corporation may be indicted,
either alone, or jointly with those cr any of them en-
tering into the conspiracy.   Although appellant may
not have had an existence when the alleged conspir-
acy among the McCormick, Deering, Plano, Osborne,
Champion, and Milwaukee Companies was entered
into, yet if it was created by the conspirators for the
purpose of executing their agreement, and did so, it
becomes a party to the unlawful scheme, and is an-
swerable for the acts of its progenitors in concocting
or executing it.   The act denounced by the statute is

deemed to be done where finished. The charge is that it was consummated in Logan county, Ky. That is to say, that the conspiracy among the harvester companies to enhance the value of their product, harvesting machines and their appliances, above their real value was consummated in Logan county, Ky., by the market value of those articles being so enhanced there within the year before the finding of this indictment, and as the natural and proximate result of the conspiracy charged. We are of the opinion that the indictment charges an offense under the statute.

A number of witnesses were introduced who testified that prior to 1906 they, as dealers in harvesting machinery in Logan county, bought harvesters and their parts from the Deering Company, the Osborne Company, the Milwaukee, and the Champion, from each its own product; that since 1906 they had bought these same machines all from the International Harvester Company of America; that prior to 1906 there was sharp competition among the dealers and manufacturers; that since 1906 the sales were to the retail dealers, who were at liberty to sell the machines at any price they saw fit; that since appellant sold all the machines, the price had enhanced about 5 per cent. Appellant offered to prove that the price of iron, steel, wood, and labor had all increased more than 5 per cent. during the same time, as well as that prices of manufactured articles generally had similarly increased, but the trial court rejected the evidence. There was not evidence offered to show at what price the machines sold, either before or since the alleged combination of the manufacturers. There was not evidence offered to show the real value of the machines, unless it be said that the market price prevailing just before the combination charged

tended to show such values. Under fair competition, and under normal conditions, the market value of a commercial commodity is its real ´value. It is that value that our legislation aimed to preserve. That value will increase or diminish according to the fluctuations of the market values of its ingredients, or of the price of labor which produces it; or by improved and cheaper methods of production, or by cheaper means of transportation; or by the invention or discovery of other products which are or may be used in lieu of the particular one; or by the increase or decrease of sources of supply and demand. Must the prosecution by its evidence establish the existence or nonexistence of all the conditions naturally affecting market values of the article in question, before it can be said to have sustained its charge? Under fair competition and normal conditions, the so-called "law of supply and demand," and the interest of producers to protect their own so as to prevent loss and to secure a fair profit, may be depended on to regulate the price of the thing. They always have done so under those conditions. When there are two or more producers of the same article, supplying the same market, without any understanding or agreement between them to regulate the price of their product so as to get more for it than they would get if· each pursued his own course, and when there is a like state of affairs among the consumers of that article, competition may be said to be fair; and when there is an absence of such abnormalities as panics, widespread strikes, wars, and such, the conditions may be said to be normal. When, therefore, the prosecution shows (1) that there has been a combination among all or any of the producers of a commodity of merchandise, by which its output is restricted or controlled alone

by the confederates in the scheme; (2) that the market price of the article was then materially enhanced; (3) that the conditions affecting commerce in general are normal; (4) that the competition otherwise than for the combination complained of would be fair—there would be established prima facie a case of violation of the statute.

It is not true that all combinations of producers are illegal, or even are wrong or hurtful. Co-operation is as essential in many kinds of business as is competition. In nearly every business it is practiced, and has been in some form or other since society was organized. The legislative action was not aimed to prevent co-operation. It was aimed against monopoly. Therefore it is not enough, under a prosecution under our statute, to show that there has been a combination among producers of their products or plants. Human nature is such that we must know the combination was intended to improve the affairs of those entering into it. They expected to make more money out of it than they made before. That is the spur of all commerce, and it would be an unwise policy that took it away. Nor is it enough to show in addition, and no more, that prices of the commodity were subsequently advanced. It may have been that the prices before were not high enough to pay the producers a living profit—though that is scarcely likely, else, save in exceptional callings, they would not have been engaged in the business where there was a choice left them to engage in some other. It is necessary to show that the general conditions affecting the market of that commodity were normal, and that but for the combination complained of the competition would have been fair; that is, natural and usual. Then the burden would shift to the de-

fense to show such exceptional conditions affecting the particular commodity as naturally tended to produce the increase in market price which the prosecution had proved; such, for example, as that the cost of labor, or of the ingredients or constituent parts, or of transportation, or any other particular matter peculiarly within the defendant's knowledge, which legitimately affected the selling price of the article as compared with its previous selling price. The everlasting conflict between seller and buyer is as old as the race, as well as world-wide. A jury knows it as well and is as competent to apply the law of its existence, as, perhaps, any other practicable tribunal under our government. The jurors will know that, without combinations, prices will fluctuate as they may be affected by innumerable causes. They know this, as they know the most common experiences in life. They know, too, that if there is but one seller and many buyers, the former will get more than an equitable price for his product. They know that a combination among all, or a very considerable number of sellers, whereby the situation is made equivalent to there being but one seller, the many buyers are more than apt to suffer. The statute is thrust in between such unconscionable purposes and the otherwise helpless buyers.

On the trial of this case the circuit court gave this instruction to the jury:

"The court instructs the jury that if they believe from the evidence beyond a reasonable doubt that the defendant, International Harvester Company of America, before the finding of the indictment herein created, established, organized, entered into, or became a member of, or in any way interested in, a pool, trust, combine, agreement, confederation, or

understanding with the McCormick Harvester Company, Deering Harvester Company, Milwaukee Harvester Machine Company, the Champion Machine Company, the D. M. Osborne Company, and the Plano Machine Company, or any of said companies, or with other companies or corporations or individuals, for the purpose of regulating or controlling or fixing the price of harvesting or farming implements or reapers, mowers, rakes, binders, or repairs of same manufactured by said parties, and to be produced and manufactured by them, and that the purpose and effect of said pool, trust, combine, agreement, confederation, or understanding, if any, was to enhance the price of said harvesting or farming machinery, reapers, mowers, rakes, binders, or repairs of same above their real value; and if the jury further believe from the evidence that the defendant company in pursuance of, or while a member of, a party to, or any way interested in, any such pool, trust, combine, agreement, confederation, or understanding in Logan county, and within one year before the finding of the indictment, sold any harvesting or farm machinery, reapers, mowers, rakes, binders, or repairs of same, or entered into any contract with any agent which contemplated the sale of any of said harvesting or farm machinery, reapers, mowers, rakes, binders, or repairs for same—then and in that event the jury should find the defendant guilty, and fix its punishment at a fine of not less than $500 and not more than $5,000, in the discretion of the jury.''

The instruction should, in addition, have had inserted after the words ''or repairs for same,'' fourth [fifth] line from the bottom, the words ''at more than their real value,'' as, unless the conspiracy was

formed in Logan county, it would not be an offense if it was not consummated there by selling the articles charged at more than their real value.

The evidence should have been admitted showing the increase in the costs of material and labor entering into this machinery; then the jury should have been instructed that, if the increase in price was due solely to the increase in cost of labor or material in producing the articles, the verdict should be for the defendant, although the jury might find that it and the other concerns named in the indictment had entered into an unlawful combination in another state for the purpose of affecting the prices of farm machinery.

Judgment reversed, and cause remanded for a new trial, under proceedings consistent herewith.