## International Harvester Co. of America v. Commonwealth.

(Decided June 21, 1911.)

### Appeal from Logan Circuit Court.

1. Monopolies—Criminal Prosecution.—Under the anti-trust laws the gist of the offense consists in the trust or combination enhancing

the price of an article it sells above the real value or in depreciating the price below the real value.

2. Monopoly to Fix or Regulate Prices.—It is not unlawful for a monopoly, trust or combination to fix, regulate or control prices provided it does not increase above or depreciate below its real value the article upon which it fixes a price.

3. Evidence—Sufficiency of to Show Combination or Monopoly to Fix Prices.—When the Commonwealth shows by direct or circumstantial evidence that two or more independent concerns are selling the same article in competition with each other, and that it was being sold at a price fixed by each, and it further shows that the several concerns so engaged formed a combination or trust for the purpose of selling the article, and thereafter it was sold by a central agency, this will be sufficient to establish the combination to fix prices.

4. Evidence—Presumption of Purpose to Fix Prices.—When the formation of the trust or monopoly is shown, it will be presumed to have been organized for the purpose of fixing, controlling and regulating prices.

5. Evidence as to When Monopoly Was Formed.—It is not necessary that the Commonwealth should prove that the combination was entered into within a year before the finding of the indictment. It will be sufficient to show that it was entered into previous to the indictment and was in existence within one year before the indictment was returned.

6 Evidence That Combination Was Entered Into Where Prosecution is Pending.—It is not essential to guilt that it should be shown that the combination was entered into in the county in which the prosecution is pending, if it is established by sufficient evidence that the combination was entered into in some other county, State or country, and in pursuance of such combination articles sold by the parties to it were sold in the county where the prosecution is pending within a year next preceding the indictment.

7. Evidence of Sales Above Real Value—Burden of Proof.—When the Commonwealth has shown the combination to fix or control prices, evidence of an advance in prices by the combination under substantially the same market conditions that existed before the advance is sufficient to sustain a verdict of guilty in the absence of evidence that the advance was justified by market conditions or corresponding increase in the cost of production.

8. Evidence to Rebut Necessity for Advance in Price.—When the accused offers evidence to justify the advance in price, the Commonwealth should be allowed to show that the advance was not attributable to market conditions or increased cost of labor and material.

9. Incorporation—Evidence of.—Incorporation may be shown by the certificate required by Section 4545 of the Kentucky Statutes to

be filed in the office of the Secretary of State, or by parol or other evidence.

10. Former Acquittal or Conviction.—A prosecution for violation of the anti-trust laws may be had in each county in which the offense. is committed, and this prosecution may be followed by others in each county if the offense is again committed subsequent to the first indictment.

BROWDER & BROWDER and ARTHUR M. RUTLEDGE for appellant.

JAMES BREATHITT, Attorney General and TOM B. McGREGOR, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

This is a prosecution under the anti-trust laws of the State, and is the second appeal of the case. In the opinion on the former appeal, which may be found in 137 Ky., 668, it is said:

"The gist of the offense denounced by our statutes against pooling is that the purpose of the pool is to enhance the value of the article pooled above its real value. Where the design of the poolers is to so enhance the value of their product, or where, whatever their design, such is the natural effect of their action, and such as was necessarily foreseen because of its obviousness, the offense is completed. A party is presumed to have intended a result which is the logical and usual outcome of his wilful act. * * * When, therefore, the prosecution shows (1) that there has been a combination among all or any of the producers of a commodity of merchandise, by which its output is restricted or comtroled alone by the confederates in the scheme; (2) that the market price of the article was then materially enhanced; (3) that the conditions affecting commerce in general are normal; (4) that the competition otherwise than for the combination complained of would be fair— there would be established prima facie a case of violation of the statute."

On the trial from which this appeal was prosecuted, the jury found the appellant guilty and assessed the punishment at a fine of five hundred dollars.

In the argument presenting the reasons why the judgment should be reversed, the chief contentions of counsel for appellant are that (1) there was no evidence that the appellant formed or entered into a combination,

or that it became a party to such combination if one was formed or entered into, for the purpose of fixing, regulating or controlling prices or limiting the production or manufacture of harvesting machinery. (2) That there was no evidence that the combination formed or entered into, if such was the case, was organized or created for the purpose of or that it had the effect of or did as a matter of fact enhance the price of the agricultural machinery manufactured or sold by the combination above its real value. (3) That there was no evidence that a combination was entered into within one year next before the finding of the indictment, or that a combination was entered into in Logan county, or that appellant sold any machines within the year next preceding the indictment in Logan county in pursuance of or as a party to a combination.

Upon the trial the Commonwealth introduced several witnesses, among them W. M. Gill, who testified that from 1898 to 1902, he represented as salesman and in other capacities the Deering Machine Company, a concern that manufactured and sold mowers, reapers, binders, and repairs therefor; and that during this time there was active competition between the Deering Machine Company, and the McCormick, the Plano, the Champion, the Osborne and the Walter A. Wood machine companies, all of which companies were engaged in the same business. That each of these companies during this time had its own salesmen, agents and employes, and each company conducted its business entirely independent of the others. That each company sold its machines and repairs at prices fixed by itself and that differed from that at which other machines and repairs were sold. That in the fall of 1902 the International Harvester Company of America was formed or organized. That he learned this from information given him that the Deering Machine Company for which he worked, and the other companies mentioned, had been merged into what is known as the International Harvester Company of America. He further testified that he worked for and represented the International Company after it was organized for about two years in the same capacity that he had previously represented the Deering Machine Company. That the business of the International Company was divided into divisions, each division being designated by the name of one of the machine companies. For example, the division that sold Deering machines

was known as the Deering division. That after these companies were merged into the International Company there was no competition between the machine companies that became a part of the International Company, nor was there any competition between the agents or employes representing the various divisions of the parent company, and all the machines controlled by it were sold at the same price. He further said that the agents of the International Company had charge of the business involved in the sale of machines manufactured by all the companies. That all agents were employed by, reported to and represented the International Company, no matter which one of the machines mentioned they sold or looked after.

R. D. Traugher testified that during the years mentioned he was engaged in business in Logan county, and for several years prior to 1902 he sold Champion machines, and at one time the Deering, and at another the Osborne—buying these machines from the respective companies that manufactured them. That in 1907 and 1908 he sold Champion machines that he bought in those years from the International Company, and that the price at which it sold these machines was about five per cent. more than the price at which they were sold by the individual company before the combination was formed. He further said that in 1908 he handled the Osborne, Champion and Deering machines under a contract with the International Company, and that these machines were bought by him and sold at the same price.

Oscar Hutcherson testified that he was engaged in 1908 in business in Logan county, and bought from the International Company Deering machines. Other witnesses testified to substantially the same state of facts, On cross-examination the witnesses introduced for the Commonwealth, or some of them, were asked, and said, that the price of iron, steel, wood and labor advanced greatly more than five per cent. during the years that the International Company advanced the price of the machines sold by it five per cent.

No witness was introduced in behalf of the appellant company. Without relating further the facts, we may say that upon the whole the evidence introduced in behalf of the Commonwealth conduced to show (1) that for several years prior to 1902 the Deering, McCormick, Plano, Champion and other harvesting machine companies sold in competition in Logan county, Ken-

tucky, mowers, reapers and binding machines manu-
factured by each of these respective concerns, and that
each establishment, independent of the others, had its
agents in the field looking after the business of selling
and setting up the machines sold by it, and collecting
the purchase price. (2) That in 1903 and thereafter, all
the machines and fixtures theretofore made by these sev-
eral companies were sold by the International Company
and there. was no competition between these respective
companies or any local or other agents representing
them. (3) That one agent representing the Interna-
tional Company took the place of the several agents who
had represented the other companies. (4) That this
condition of affairs that had continued from 1903 existed
when the indictment was returned. (5) That in 1906 or
1907 the price of machines was advanced by the Inter-
national Company five per cent. above the price they
were sold at when the sales were controlled by the com-
panies that manufactured them, and that an advance of
twenty per cent. was made on some parts of the ma-
chinery. (6) That the expense of the International
Company for selling machines and collecting money was
less than it was when they were sold in competition, as
under the old arrangement each company had its own
agents or representatives, while under the new, one
agent or representative acted for all of them. (7) That
within one year before the finding of the indictment, ma-
chines were sold by the International Company in Logan
county, Kentucky.

We think this evidence was abundantly sufficient to
show that a combination was entered into between
these several companies and that the purpose of it was to
fix, regulate and control the price of the machines made
by them, and that the International Company was a
party to this combination, and that under its name the
several companies sold their product. It is not necessary
to sustain a conviction in cases like this that there
should be positive evidence that a combination or con-
spiracy was formed and that the purpose of it was to fix,
regulate or control prices. A rule of evidence like this
would in almost every case operate to defeat the execu-
tion of the law, as it would be difficult, if not impossible,
in many cases to introduce witnesses who could testify
of their own knowledge that such a combination was
formed and that its purpose was to fix or control prices.
It will be sufficient to show as was done in this case,

that two or more separate and independent concerns were selling the same line of machinery or the same article in competition with each other, and that it was being sold at a price fixed by each, whether the price was the same or different, and to further show by circumstances that the several concerns so engaged formed a combination, pool or trust for the purpose of selling the product of their respective factories or establishments, and thereafter the machinery or article was sold by a central agency or corporation owning or representing the various plants at a price fixed by it, or by its constituent parts. When the formation of the trust or combination is thus shown, it will be presumed to have been organized for the purpose of fixing, controlling and regulating prices. There are many cases in which the intention to violate the law is a necessary ingredient in the offense, but the Commonwealth is not required to show by direct evidence the existence of this intent. A rule of evidence like this would defeat in a majority of cases the ends of justice, as it is not often that persons who contemplate violating the law make known in advance their purpose in such a way as that it can be proven against them. And so, to meet conditions like this, the law presumes that persons of accountable years intended to do that which they did do, and will infer from the act that the intention to commit it existed.

Nor is it necessary that the Commonwealth should prove that the combination was entered into within a year before the finding of the indictment. It will be sufficient to show that it was entered into previous to the indictment and was in existence within one year before the indictment was returned. When the formation of a pool, trust or combination is established to fix, regulate or control prices or to limit the production of an article, its existence is a continuing offense, and its acts a violation of law in every place in this State in which it attempts to do or carry on business. This point was expressly ruled in International Harvester Co. v. Commonwealth, 124 Ky., 543. But, it is insisted that there was no evidence that this combination or conspiracy was entered into in Logan county, Kentucky. This argument is lacking in merit as it is not essential to the guilt of the accused in prosecutions for violations of the anti-trust laws of this State that it should be shown that the combination or conspiracy was entered into in the county in which the prosecution is pending. If it is established

by sufficient evidence that the combination was entered
into in some other county, State or country, and in pur-
suance or in furtherance of such combination or con-
spiracy articles sold by the parties to the combination
or conspiracy or any of them were sold in the county
where the prosecution is pending within a year next
preceding the indictment, a conviction may be had in the
county in which the sale was made if in other respects
the proof is sufficient, as the offense is committed when
and where in furtherance of the conspiracy or combina-
tion the articles are sold. Upon this branch of the case
we may say with confidence that if the prosecution had
been instituted under the act of 1890, now section 3915
of the Kentucky Statutes, there could be no doubt of the
sufficiency of the evidence to sustain a verdict. (Com-
monwealth v. Grinstead, 108 Ky., 69; Commonwealth v.
Bavarian Brewing Co., 112 Ky., 930.) But section 3941a
of the Kentucky Statutes is to be read and construed
in connection with section 3915 of the Kentucky Statutes,
as held in Commonwealth v. International Harvester
Co., 131 Ky., 551; Owen County Burley Tobacco Society
v. Brumback, 128 Ky., 137; International Harvester Co.
v. Commonwealth, 137 Ky., 668. So that, in addition to
showing that the combination was entered into, and that
it had for its purpose the fixing, regulating or control-
ing of prices, the Commonwealth must show that the ef
fect of the combination was as expressed in section 198
of the Constitution: ''To depreciate below its real value
any article, or to enhance the cost of any article above
its real value.'' Whether or not the Commonwealth
succeeded in making out a case upon this essential point,
presents the only difficult question in the record. So
many factors enter into its solution that it is not easy
to determine when the price of an article has been en-
hanced above its real value, as it is contended the price
of machines were. The condition of the market, the
character of the article, the use to which it is put, the de-
mand for it, the price of labor and material, the cost of
production, and the expense of sale, are some of the
things that are to be considered in fixing the price.
And, as the appellant corporation, and the machine com-
panies that are a part of the combination, have their
factories in other states, the difficulty in procuring evi-
dence on the part of the Commonwealth that might throw
light upon some or all of these questions can be easily
appreciated. But the fact that the combination was

formed, in connection with the legal presumption that it was formed for the purpose of fixing, and controlling prices, is sufficient to show in the absence of countervailing evidence that an advance in the price prevailing before the combination was entered into enhanced the price of the article above its real value, if market conditions before and after the advance were substantially the same and the cost of production had not materially increased or in proportion to the advance. And so we think that in prosecutions under the statute, when the Commonwealth has shown by evidence and legal presumption the combination to fix, control and regulate prices, that evidence of an advance in prices by the combination under substantially the same market conditions that existed before the advance is sufficient to sustain a verdict of guilty in the absence of evidence that the advance was justified by changed market conditions or a corresponding increase in the cost of production. Under this rule, the Commonwealth made out its prima facie case, but the unexplained and uncontradicted evidence of an advance in the price of labor and material entering into the construction of the machines rebutted the inference of guilt, and the court should have directed a verdict for the defendant. But the Commonwealth on another trial should be permitted to show in chief or in rebuttal that the advance in labor and material entering into the construction of the machines was not sufficient to justify the advance in the price or to show in other ways by pertinent facts or circumstances that the advance was not attributable to market conditions or the increased cost of labor and material.

Another contention on the part of the appellant is that there was not sufficient proof of its incorporation, and as this question may arise on another trial, we will dispose of it. Section 571 of the Kentucky Statutes provides in substance that all corporations formed under the laws of this or any other State, and carrying on any business in this State shall file in the office of the Secretary of State a statement signed by its president and secretary, giving the location of its office, or offices in this State, the name or names of its agent or agents thereat upon whom process can be served; and section 4545 of the Kentucky Statutes provides that: Certified copies of record in the office of the Secretary of State shall be prima facie evidence of their contents, and may be used in the trial of cases as evidence provided they

are mailed under seal to the circuit court clerk in the manner required by law in forwarding depositions.

If the corporation indicted has complied with these statutes, a certified copy of the statement required to be filed in the office of the Secretary of State will be sufficient evidence of incorporation, when it has been forwarded to the clerk in the manner pointed out in the statute. But if for any reason this record is not at hand, the corporate existence of the accused may be established by other and parol evidence. (Standard Oil Co. v Commonwealth, 122 Ky., 440; George H. Goodman Co. v. Commonwealth, 30 Ky. L. R., 519.) It would seem therefore that on another trial the Commonwealth should not have any difficulty in showing that the appellant company is a corporation, if it failed in the proper manner to show that fact upon the last trial—a question it does not seem necessary to decide.

It is also urged that the plea of former acquittal, interposed on behalf of appellant, should have been sustained. The indictment in this case was found in May, 1909, and it appears that an indictment charging the same offense was returned by the grand jury of Simpson county in March, 1909, and that in November, 1909, upon a trial under that indictment it was acquitted. But, in our opinion this acquittal, or a conviction if there had been one, was not a bar to a conviction under another indictment for the same offense. Section 3917 of the Kentucky Statutes provides in part that:

"If any corporation, company, firm, partnership, or person or association of persons, shall by court of competent jurisdiction be found guilty of any violation of any of the provisions of this act (the anti-trust act) such guilty party shall be punished by a fine of not less than five hundred dollars and not more than five thousand dollars."

So that every corporation, firm, partnership or association that forms a pool, trust or combination for the purpose of fixing or controlling prices, and enhancing the price of any article above its real value, or that limits the amount or quantity of any article of property or merchandise to be produced or manufactured, and thus enhances the price of the article above its real value, or depreciates the price below its real value, shall be deemed guilty of the offense denounced by the statutes heretofore alluded to. The offense under these statutes does not

consist merely in forming the combination or trust and in fixing or regulating the price, or in limiting the production, but in addition thereto the price must be enhanced above or depreciated below its real value by the pool, trust or combination. Now, it is manifest from this that it is the sale of the article at a price above or below its real value that constitutes the overt act of guilt, and it would seem to follow from this that each sale at a price in violation of the statute would be a separate offense. The existence of the pool, trust or combination is a continuing thing, but it is not this but the sale of the article that offends the law. These sales might be committed every day in many places or only occasionally and in a few places. When and where the acts violative of the statute will occur depends upon the pleasure of the persons operating and controlling the central agency. If a pool, trust or combination organized for the purpose of fixing prices could be reached by the processes of the court, and compelled to dissolve, or observe the law, there would be more reason in support of the argument that only one action or prosecution should be allowed, for in that one the desired end could be accomplished. But when particular transactions are to be dealt with and punishment inflicted for each one that is a violation of law, it would in many instances be trifling with the purpose of the statute and defeat the object of its enactment if there could only be one conviction when there had been many wilful offenses. In the construction of penal statutes intended to correct or prevent the doing of things hurtful to the good of the people or enacted to promote the convenience, safety or health of the public, the courts have endeavored to compel obedience without unreasonable oppression, have sought to make the law effective, and yet not so harsh as to inflict punishment entirely disproportionate to the offense. Illustrative of this settled practice are the cases of ex parte Snow, 120 U. S., 274, 30 L. Ed., 658; Wilson v. Commonwealth, 119 Ky., 769; Cawein v. Commonwealth, 110 Ky., 273; Commonwealth v. Standard Oil Company, 120 Ky., 724; B. F. Johnson Publishing Co. v. Commonwealth, 30 Ky. L. R., 148; Friedeborn v. Commonwealth, 113 Pa. St., 242, 57 Am. Rep., 464; Parks v. Nashville, Chattanooga & St. L. Ry., 13 Lea (Tenn.) 1, 49 Am Rep., 655. In other cases as in violations of the liquor law, gambling and the like, it has been found necessary to treat each violation of the statute as a distinct offense, and there may be as

many prosecutions as there have been violations. In short, the policy of the courts has been to so construe these statutes as that the legislative purpose may be carried out and the evil intended to be remedied removed or suppressed. If one conviction will accomplish this purpose, generally only one will be allowed. If, however, the mischief aimed at is of such a character as that there must be many prosecutions to enforce observance to the law, then many will be upheld. Coming now to apply to a case like the one we have the rule laid down in the cases cited, we think that the ends of the law would be subserved by allowing in each county in which the offense is committed one prosecution resulting in an acquittal or conviction as the case may be, for the period covered by the indictment. This prosecution may, of course, be followed by others in each county in which the offense is again committed subsequent to the indictment. This measure of punishment we think will be sufficient to enforce obedience to the law, but the one advocated by counsel would be wholly inadequate to accomplish the desired end.

Wherefore the judgment is reversed with directions for a new trial in conformity with this opinion.