## International Harvester Company of America v. Commonwealth.

(Decided March 16, 1912.)

### Appeal from Bullitt Circuit Court.

Combinations to Regulate and Fix Prices of Commodities Above or Below Their Actual Value—Sufficient Proof of.—This being a civil action brought by the Commonwealth to recover of appellant the penalty for a violation of section 3915, as amended by section 3941a, Kentucky Statutes, and the Commonwealth having proved: (1) That six harvesting machine companies, between which there had been previous competition, by a combination with appellant gave it entire control of the business of selling their manufactured products, harvesting machines, for the purpose of controling and fixing the prices thereof above their real value; (2) that following this combination and in pursuance thereof, the prices of machines were increased by appellant above their real value; (3), that the market conditions were normal, both before and after the combination; (4), that the machines were sold by appellant at the increased prices and above their real value, in Bullitt county within a year before the institution of the action. Held, That such proof was sufficient to authorize the verdict and judgment recovered by the Commonwealth as appellant failed to prove by sufficient evidence that such increase in the prices of the machines was due to the increased cost of material or labor used in their manufacture; increase in the cost of putting them on the market; or increase in the efficiency of the machines.

FAIRLEIGH, STRAUS & FAIRLEIGH, HUMPHREY & HUMPHREY, ARTHUR M. RUTLEDGE for appellant.

J. F. COMBS, JAS. BREATHITT, CARROLL & CARROLL, T. C. CARROLL and F. E. DAUGHERTY for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This action was instituted in the court below against the appellant, International Harvester Company of America, by the appellee, Commonwealth of Kentucky, to recover of it the penalty prescribed for a violation of the provisions of section 3915, Kentucky Statutes, as amended by section 3941a, Kentucky Statutes; the first being known as the anti-trust act of May 20th, 1890, and the last as the Farmers' Pooling Act of March 21st, 1906.

The prosecution covered the year beginning July 21st, 1910, and ending July 21st, 1911. The trial resulted

in a verdict and judgment inflicting upon appellant a fine of $5,000, and from that judgment it has appealed.

Two grounds of reversal are relied on: 1st., that the verdict is flagrantly against the evidence; 2nd., that the trial court erred in instructing the jury.

Appellant filed a demurrer to the petition which was overruled. It appears from the evidence introduced in appellant's behalf that its affirmative grounds of defense were, that the increase in prices of machines sold by it was due (1) to the increased cost of the materials entering into their manufacture (2), to the increased cost of labor employed in their manufacture; (3) the increased cost of putting the machines on the market; (4) the increase in the efficiency of the machines.

The demurrer not only put in issue the general sufficiency of the petition, but also assigned as a ground an alleged conflict between section 3915, Kentucky Statutes, as construed by this court in connection with section 3941a, and the Fourteenth Amendment to the Constitution of the United States. We think the demurrer was properly overruled. The objection raised by it to the sufficiency of the petition was not well taken, as tested by the construction given sections 3915 and 3941a, Kentucky Statutes, in International Harvester Company of America v. Commonwealth, 137 Ky., 668, and on the second appeal of the same case in 144 Ky., 483, it stated a cause of action.

As to the Federal question raised by the demurrer, it is sufficient to say that it was decided adversely to appellant's contention in the case of the Commonwealth v. International Harvester Co., 131 Ky., 551, and we adhere to that ruling.

Indeed, by the opinion in that case it was not only held that the sections, supra, were not in conflict with the Fourteenth Amendment to the Federal Constitution, but that by construing section 3941a, as an amendment to section 3915, as was evidently intended by the Legislature, they could properly be and were harmonized. In effect the same conclusion had been arrived at by the court in the previous case of Owen County Burley Tobacco Society v. Brumback, 128 Ky., 137.

It may be said, that since these two cases were decided, there is no law in this State which forbids the existence of trusts, pools or combinations, or that prohibits them from fixing and maintaining the price or prices of

their products or commodities, so long as they are not sold for more, nor less, than their real or market value. Obviously, the real value of any marketable commodity is its market value under fair competition, and under normal market conditions. It goes without saying, however, that such value would increase or diminish according to the increase or decrease in the market value of the ingredients, or the increase or lowering of the price of the labor, which produces it. The court had in mind these conditions when in International Harvester Company of America v. Commonwealth, 137 Ky., 668, it said:

"When, therefore, the prosecutions show (1) that there has been a combination among all or any of the producers of a commodity of merchandise, by which its output is restricted, or controlled alone by the confederates in the scheme; (2) that the market price of the article was then materially enhanced; (3) that the conditions affecting commerce in general are normal; (4), that the competition otherwise that for the combination complained of would be fair; there would be established prima facie, a case of violation of the statute."

In further elaboration of the subject the following additional excerpt from the opinion will prove instructive:

"Therefore, it is not enough under a prosecution under our statute to show that there has been a combination among producers of their products or plants; * * * nor is it enough to show in addition, and no more, that the price of the commodity was subsequently advanced. * * * It is necessary to show that the general conditions affecting the market value of that commodity were normal, and that but for the combination complained of the competition would have been fair; that is natural and usual."

In the opinion on the second appeal of the same case (International Harvester Company of America v. Commonwealth, 144 Ky., page 403), is a statement indicating the various elements to be taken into the account in determining what constitutes a violation of the statute in question:

"But the fact that a combination was formed, in connection with the legal presumption that it was formed for the purpose of controlling and fixing prices, is sufficient to show in the absence of countervailing evidence, that an advance in the price prevailing before the combi-

nation was entered into, enhanced the price of the article above its real value; if market conditions before and after the advance were substantially the same; and the cost of production has not materially increased, or in proportion to the advance. And so we think in prosecutions under the statute when the Commonwealth has shown by evidence and legal presumption the combination to fix, control and regulate prices, with evidence of an advance in prices by the combination under substantially the same market conditions that existed before the advance, is sufficient to sustain a verdict of guilty in the absence of evidence that the advance was justified by changed market conditions, or a corresponding increase in the cost of production. The offense under these statutes does not consist merely in forming the combination or trust and in fixing or regulating the price, or in limiting the production, but in addition thereto the price must be enhanced above or depreciated below its real value by the pool, trust or combination. Now, it is manifest from this that it is the sale of the article at a price above or below its real value that constitutes the overt act of guilt, and it would seem to follow from this that each sale at a price in violation of the statute would be a separate offense.''

It is now necessary to apply the principles thus stated to the facts of this case in order that we may determine whether the fine imposed by the verdict and judgment upon the appellant was authorized. Our reading of the record convinces us that the following facts were established by the evidence of the Commonwealth. 1st. That six companies or corporations engaged in the manufacture and sale of harvesting machines and all doing business in this State, viz.: Champion Machine Company; Deering Machine Company; McCormick Machine Company; Plano Machine Company; Milwaukee Machine Company, and Osborne Machine Company, between which there had been previous competition, entered into a combination to fix and regulate, and did fix and regulate, the prices at which their machines should be sold throughout the United States; this combination being effected by transferring the ownership and control of the companies named and the business of each of them to the appellant corporation, known as the International Harvester Company of America, which, since the combination, has controlled all the business formerly done

by the six companies separately. 2nd. That immediately following this combination the competition which had theretofore obtained between the several companies ceased and the prices of the machines formerly sold by each of them were by appellant increased above the prices at which they were sold prior to the combination; the increase in price of binders being $12, mowers $4, and hay rakes $2. 3rd. That the market conditions were normal both before and after the combination. 4th. That the machines named were sold and offered for sale by appellant at the increased prices in this State and in Bullitt County, since the combination was effected, and within a year before the institution of this action.

Proof of the foregoing facts was sufficient to create the legal presumption that the increase in the price of the machines was an increase above their real value and was an intended consequence and result of the combination; as previously stated, their real value as marketable commodities being their market value under fair competition and under normal conditions.

Upon the Commonwealth's showing of the above facts, the burden of proof was shifted to appellant to show that such increase in price on the machines after the combination, was due to the increased cost of material used in their manufacture, the increased price of the labor employed in their production, or increase in the cost of putting them on the market.

The combination of the several machine companies and their absorption by appellant in 1902, resulted in at least three increases in the price of the machines, sold in the course of business by appellant, between the years 1902 and 1908; the first being made in 1903, and shortly after the combination was effected. It is not perceived how any increase in the cost of material or labor entering into the production of the machines or cost of putting them on the market, occurring, as was shown by the evidence, after the first increase in the price of the machines, could have caused that increase.

While appellant's evidence conduced to prove an increase since 1902, in the cost of both the material and labor entering into the production of the machines, it is not to be overlooked that the cost of putting them on the market was greatly reduced.

According to the evidence the six companies which

formed the combination, each maintained in this State a chief office and each its own agents and employes. After the combination, five of these chief offices were abolished and a large number of agents and employes discharged. A witness, Crenshaw, who became agent for appellant in a district of eight counties, including Bullitt, testified that in his district alone the combination resulted in a reduction of expenses to the amount of $7,000. J. L. Gardner, appellant's general agent in a territory of 43 counties of this State, testified that he sold in those counties, since the combination, 2,000 mowers, 600 binders, and 1,200 hay rakes. As since the combination the increase of price placed by appellant on each binder is $12; on each mower $4, and on each hay rake $2, the aggregate of these sales realized from the increase in price on the machines disposed of by Gardner in the 43 counties, was $17,600.

On the other hand, if, as testified by Crenshaw, there was, in putting the machines on the market in his district of eight counties, a saving in expenses of $7,000, the amount saved in the 43 counties would be about $35,000, and in the entire State a proportionately larger sum.

We have been unable to discover in the record any contradiction of this testimony of Gardner or Crenshaw. It would seem, therefore, that the increase in the selling price of the machines could not have resulted from an increase in the price of labor and material or other causes urged by appellant, in view of the lessened expense of putting the machines on the market. In other words, it is fairly apparent from the evidence that the reduction of the expense in putting the machines on the market, resulting from the combination, largely exceeded any increase in the cost of labor and material.

While it is true a number of experts testified for appellant that there had been an increase since the combination in the cost of material from which the machines are manufactured—such increase being as they claimed about 20 per cent. on steel, 25 per cent. on pig iron, and perhaps nearly as great a per cent. on timber, leather and paints—a number of witnesses introduceed by appellee, some of them engaged in the harvesting machine business and others, dealers in both steel and pig iron, testified that while there was some increase in the price of the named metals, between 1903 and 1908, from 1909 to 1911, there was a corresponding decrease in prices;

and from their view of the matter, covering the period from 1903 to 1910, the average price on these metals and other materials remained practically the same.

It appears from the evidence that about 85 per cent. of the material in the machines sold by appellant is metal, the remaining 15 per cent. being wood and leather, mainly wood. It further appears from the evidence that the Wisconsin Steel Company, a steel manufacturing plant, though separately incorporated, is subsidiary to and owned by the appellant corporation, and furnishes to it sixty per cent. of the steel used in manufacturing its machines. What it costs appellant to manufacture through the Wisconsin Steel Company the steel furnished it by that company does not appear from the evidence, but it is legitimate to presume that the steel thus obtained by it is secured at prices greatly below what it would have to pay if the steel were obtained from similar manufacturies in which appellant owns no interest and over which it has no control.

It is noticeable throughout the bill of evidence that none of the expert witnesses introduced by appellant would state in figures the cost of manufacturing any one of the machines sold by it. Certainly such of these witnesses as engage in their manufacture knew the precise cost of each machine and should have been able to state it.

Some of appellant's witnesses also testified that the increase in the price of labor had been gradual since 1902; indeed, that it had in these years increased 27½ per cent. This estimate was arrived at by adding the gross number of hours the officers and employes labored in a given time each year and dividing it by the aggregate amount paid for the labor during the same time. They failed, however, to segregate the skilled from the unskilled labor, or to differentiate the several classes of labor, that it might be known how much of it was paid for by the hour or day or how much by the job or piece of machinery; nor did any of them state what proportion the cost of the labor bore to the entire cost of the machines.

We are unable to see that the evidence adduced on the trial by appellant ought, as insisted by its counsel, to have convinced the jury that the advance in the price of its machines was attributable to changed market conditions, or increased cost of labor and material.

Without further discussing appellant's evidence, it is deemed proper to say that it does not appear to present all the facts upon which its defense is claimed to rest, but rather to withhold such of them as would reveal the sources of profit appertaining to its business. It is not putting a tortured construction upon the evidence to say that, as a whole, it conduces to prove that there was a combination between the several companies composing the appellant company, to fix, control and regulate the price of harvesting machines in this State and in Bullitt county, and that as a result thereof such machine were sold by appellant in that county within a year before the institution of this action, at increased prices and beyond their real value. Moreover, that the advance in the price of the machines was not attributable to market condition or increased cost of labor or material.

We think there was also evidence conducing to show that the general conditions affecting the market value of the machines were practically the same after the combination and when the sales in Bullitt county were made, as before the combination, that is normal, and that but for the combination complained of the competition would have been fair and free.

It is, however, insisted for appellant that the increased efficiency of the machines, is also an element to be considered in determining whether the increased prices at which the machines were sold were above their real value. Some of appellant's witnesses did testify as to the increased efficiency of the machines, growing out of improved construction from the use of modern inventions and better material whereby the necessity for and expense of repairing them is lessened to appellant and purchasers of the machines, but to what extent, if at all, this should add to the price of the machines was not made clear. One or more of these witnesses admitted that the increased efficiency of the machines relieved appellant of the expense of keeping in its employ the many expert machine repairers it formerly retained in its service and paid, whether at work all the time or not.

Several witnesses introduced for the Commonwealth testified that they owned and were familiar with such machines and that those sold by appellant since the com-

bination was effected were not more efficient than they were before. ·

· It was also in evidence that when first invented, such machines were much less efficient than now and far more costly; and that new inventions, better material and better workmanship, have brought them to their present high state of efficiency. It is, however, equally true, that along with their increase in efficiency there has been a corresponding decrease in the price of the machines, and they can now be purchased at less than half their original price. So, in view of these facts, there is room to doubt whether proof of the increased efficiency should have had any weight with the jury in determining whether the increase in the price was proper. However, the evidence on the question of increased efficiency all went to the jury, and was considered by them with other evidence in the case. .

Our review of the record furnishes no reason for sustaining appellant's contention that the verdict was flagrantly against the evidence. Appellant complains of instruction No. 1 on the ground, as alleged, that it allowed a verdict of guilty, if appellant, in Bullitt county and within a year before the institution of the action, entered into a contract with any agent which contemplated sales of its machines in that county in pursuance of a combination with others to fix and control prices. This feature of the instruction was not, in our opinion, misleading to the jury or prejudicial to the appellant, as in the same connection, as well as in other parts of that instruction and also in instruction No. 2, the jury were told that a sale of one or more of the machines by appellant in Bullitt county within a year before suit, resulting from the combination complained of and at a price above its real value, was necessary to a recovery by the Commonwealth of the statutory penalty. Moreover, sales of machines in Bullitt county within the time indicated were admitted by appellant. Furthermore, the instruction is in the form approved by us in the case of International Harvester Company of America vs. Commonwealth, 137 Ky., 668, and we are concluded by that approval.

Appellant also makes complaint of the trial court's refusal to give the following instruction offered by it:

"In determining the real value of the machines sold by the defendant, the jury should consider the improved

condition of the machines, if they believe from the evidence such improvement enhanced its real value.''

We do not think the refusal of this instruction was error. The instruction was improper as it singled out and gave undue prominence to only one of the several matters relied on by appellant as justifying the increase in the price of its machines; and besides, the ground of defense, with respect to which it sought to advise the jury, was in substance and meaning sufficiently presented by the instruction given.

Our conclusion is that the record furnishes no cause for disturbing the verdict, therefore, the judgment is affirmed. The whole court sitting.