## International Harvester Company of America v. Commonwealth.

(Decided April 18, 112.)

### Appeal from Todd Circuit Court.

1.  Criminal Law—Violation of Anti-trust Statute—Evidence of Sale. —The fact that a sale of the prohibited articles was made in the county in which the prosecution is pending may be shown indirectly or by circumstantial evidence. In other words, by that character of evidence that in ordinary penal actions would be sufficient to establish the existence of any material fact. Evidence that the goods were purchased by merchants in Todd county, and delivered to them in Todd county, was sufficient to show that the sales were made in Todd county, in the absence of convincing proof to the contrary.

2.  Criminal Law—Evidence as to Sale at Price Above its Real Value. —Evidence examined and held to sustain the charge that the articles were sold by the company at prices greater than their real value.

3.  Criminal Law—Evidence to Show Cost of Article.—Evidence of the cost of putting an article on the market and selling it is entitled to as much weight as evidence of the cost of the manufacture of it in determining the price at which the article should be sold; and so, in ascertaining whether or not an article is sold above or below its real value, the cost of sale as well as the cost of manufacture should be taken into consideration.

4.  Criminal Law—Value of Article—Instruction.—It is not error in a prosecution under the anti-trust statute to refuse to instruct the jury that they should consider the improved condition of the machine in arriving at its value.

ARTHUR M. RUTLEDGE and BROWDER & BROWDER for appellant.

JAMES GARNETT, Attorney General and M. M. LOGAN, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

In a proceeding by penal action instituted in March, 1911, the Commonwealth recovered a judgment in the Todd Circuit Court against the appellant company for $2,500 for violating the anti-trust laws of the State found in sections 3915 and 3941a of the Kentucky Statutes.

Before entering its plea of "not guilty" to the penal action, the appellant company submitted the following demurrer, which was properly overruled by the lower court:

"Not waiving other grounds of demurrer, but insisting thereon, the defendant International Harvester Company of America hereby assigns as one ground for its demurrer herein that the act of May 20, 1890, being chapter 101 of the Kentucky Statutes, under which this action was instituted, and by virtue of which said action is sought to be maintained, must be taken, considered and read in connection with the act approved March 21, 1906, entitled "An act permitting persons to combine or pool their crops of wheat, tobacco, and other products, and sell same as a whole and making contracts in pursuance thereof valid," and when read, taken or construed in connection with said act of March 21, 1906, said act of May 20, 1890, denies to it and other persons within the jurisdiction of the State of Kentucky the equal protection of the law, and is in violation of the Fourteenth Amendment of the Constitution of the United States, and is void."

The act of May 20, 1890, did not deny to the appellant company the equal protection of the law, nor is it in violation of the Fourteenth Amendment of the Constitution of the United States. Commonwealth v. International Harvester Co., 131 Ky., 551; International Harvester Co. v. Commonwealth, 137 Ky., 668; International Harvester Co. v. Commonwealth, 144 Ky., 403.

A reversal of the judgment is asked for these reasons given by counsel for the appellant in their brief:

"(1) Because the Commonwealth failed to prove that the appellant sold in any form machinery or repairs in Todd County within the year covered by the petition;

"(2) Because the Commonwealth failed to show that the market conditions were normal or similar to conditions existing prior to the advance in price; and

"(3) Because the court failed to instruct the jury

that it should consider the improved condition of the machines in determining the question of its real value."

It will be observed that there is no issue made that the Commonwealth did not sufficiently prove that the appellant company entered into a combination with other companies for the purpose of regulating, controlling and fixing the market value of harvesting and other farm machinery; or that, in pursuance of such combination it did not regulate, control and fix the price of the machinery sold by it. It was, however, essential that the Commonwealth should prove by direct or circumstantial evidence a sale of some of the machinery manufactured or controlled by the appellant company in Todd County within the period covered by the petition but not necessary that the Commonwealth should prove directly and unqualifiedly a sale by the appellant company in Todd County within the time named in the penal action. The fact that such a sale was made may be shown indirectly or by circumstantial evidence. In other words, that character of evidence that in ordinary penal actions would be sufficient to establish the existence of any material fact will be sufficient to establish the fact of the sale in a prosecution under the anti-trust statute. Upon this point, the Commonwealth introduced J. L. Orr and H. C. Miller, both of whom testified in substance that in 1910 they were engaged in the sale of agricultural implements in Todd County, and purchased within a year next before March, 1911, harvesting machinery and other farm implements from the appellant company, and the articles so purchased were delivered to them in Todd County. This evidence was, we think, sufficient to show a sale of the machinery by the appellant to these dealers in Todd County. But, it is insisted that they were not asked where they purchased the machinery and that it was indispensible that the Commonwealth should have shown by these witnesses, or other evidence, that the machinery was actually purchased by and sold to them in Todd County. But, if, as these witnesses testified, they bought the machinery, and it was delivered to them by the appellant company in Todd County, the reasonable and fair inference from this evidence is that the sale took place in Todd County.

Considerable importance is attached by counsel for appellant to a written contract entered into between the company and the Todd County Hardware Company, with which Miller was connected, as illustrating that the

sales testified to by Miller were made in Louisville, Jefferson County, Kentucky, and not in Todd County, Kentucky. The contract does not state where it was entered into, or executed, but there is evidence that it was signed by the purchaser and an agent of the company in Todd County, subject to approval by a general agent, and that it was sent to and approved by a general agent in Louisville. Whether the approval of this general agent was indispensible to the completion of the contract does not appear, nor is it shown that it was to be approved by a general agent before becoming effective, nor is there any evidence that the agent who signed the contract in Todd County did not have authority to enter into a binding contract for the company. The mere isolated fact that the contract was to be approved in Louisville was not sufficient to overcome the presumption of its execution in Todd County, arising from the undisputed evidence that the contract was signed in that county by the purchaser and an agent of the company and the goods delivered to him in that county.

Upon the point that there was no showing that the machinery was sold at a price above its real value, there is conflict in the evidence. The witnesses for the Commonwealth testified that the appellant company, after it obtained control of the machine companies that previous to the combination did an independent business, advanced the price of the machinery between 10 and 15 per cent. For example, a machine that sold before the combination at $85 was sold afterwards for $101. Leaving out the question of the advance in the prices of materials and labor, the economic and business conditions were substantially the same before the price was advanced as they were afterwards; and, if the reasonableness of the advance in price can not be sustained upon the ground that it was made necessary by the advance in the price of the materials and labor entering into the manufacture of the machinery, the evidence, together with the reasonable and legitimate inferences that might be drawn therefrom, were sufficient to show that the machinery after the advance was sold at a price above its real value. The evidence as to the advance in the price of material and labor is very conflicting. The witnesses for the Commonwealth said that the advance in material and labor was not equal to the advance in the price of the article, while the evidence for the appellant company tended to show that the advance in the

price of machinery did not keep pace with the advance in the price of material and labor. It is worthy of notice, however, that the witnesses for the company do not seem to have taken into consideration the large amount saved to the company in the sale of its machinery after the combination as compared with the cost of selling before it was entered into. Before the combination was entered into, six companies were engaged with each other in active competition in selling harvesting and farm machinery. Each of these companies employed different managers and agents. But, after the appellant company obtained the control of these six establishments, one sales agent did the work that was formerly done by six, and it is fair to assume that a corresponding decrease in the number of employes was made in many other departments of the business. The result of this, of course, would be a material decrease in the cost of the article to the company when put upon the market, and this item is, we think, entitled to no little weight in determining whether or not the machinery was sold at a price above its real value. The cost of putting an article on the market and selling it is entitled to as much consideration as the cost of its manufacture in determining the price at which the article should be sold. In other words, if there was an increase of $5 in the cost of manufacturing an article, and a decrease of $5 in the sale of it after it was manufactured, it is apparent that the increased cost of manufacture would not add anything to the real cost of the article to the manufacturer; and, so, in ascertaining whether or not an article is sold above or below its real value, the cost of sale as well as the cost of manufacture is to be taken into consideration, although this feature seems to have been overlooked by the company's witnesses in their statements that the increase in the price of the article was made necessary by the increase in the advance of material and labor. As illustrating in a most convincing way that the appellant company was selling harvesting machinery and farm implements at a cost above the real value, one of the witnesses for the Commonwealth testified without contradiction that:

"What we call 'net extras,' which includes chains, sections, guards, knife-heads, pitmans, and everything of that sort, is 25 to 30 per cent. cheaper than it was in 1902; if there has been any change in the malleables and

castings, I don't know—very little—maybe some pieces change in this, but very little.

"Q. I will get you to state whether or not there is competition in these things—whether or not companies other than the International Harvester Company make them and sell them? A. Oh, yes, sir, three or four or five make them. Q. Can you name some of them? A. Whitman-Barnes makes them; there are two other concerns that make them—peculiar names—net extras for all machines—everything made. Q. Can be used for all machines? A. Yes. Q. And those 'net extras' as you call them, are cheaper now by 25 or 30 per cent. than they were in 1902? A. Yes, sir. Q. These 'net extras', the prices about the same now as in 1910, last year? A. Cost the same this year as they did last year."

When it is kept in mind that these extras were made out of practically the same material as the machines and, with the same class of labor it is not an unfair inference to draw from this evidence that these independent competing concerns that sold extras in 1910 at a cost of 25 or 30 per cent. less than they were sold in 1902, made a reasonable profit on them, and sold them at a fair price not above their real value and that the machinery and implements sold by the appellant company in 1910 at an advance of 10 or 15 per cent. above the price at which they were sold before the combination was entered into, were sold above their real value.

In reference to the failure of the court to give the instruction asked by counsel for appellant, that in determining the real value of the machines sold by it, the jury should consider the improved condition of the machines if they believe from the evidence such improvement enhances their real value. This identical question was raised in the case from Bullitt County of International Harvester Company of America v. Commonwealth, 147 Ky., 564, and we there held that it was not error to refuse to give such an instruction. Indeed, every material question raised in this case was made and considered in the Bullitt County case, in which the facts were substantially similar to the facts of this case. The opinion of the court in that case answers in such a full and satisfactory manner all of the reasons advanced for reversal by counsel in this case that we have not thought it necessary to write a more elaborate opinion.

Our conclusion is that no error to the substantial rights of the appellant company appears in the record, and the judgment is affirmed.