## Martin, Com'r of Revenue, v. Louisville Motors.

Feb. 7, 1939.

HUBERT MEREDITH, Attorney General, and M. B. HOLIFIELD, Assistant Attorney General, for appellant.

PHILLIP ARDERY for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This suit is an action, brought under the Declaratory Judgment Act, Civil Code of Practice, Section 639a—1 et seq., in the Franklin Circuit Court by the appellee, Louisville Motors, Incorporated, against James W. Martin, as Commissioner of Revenue of the Commonwealth of Kentucky, and as such having under his direction the Division of Motor Vehicles of the Department of Revenue, and charged with the registration of all motor vehicles within the Commonwealth.

The plaintiff, Louisville Motors, in its petition alleged that in pursuance of its corporate purposes, it had acquired and owned a large number of used automobiles, all of which had been duly registered in the Commonwealth, and that it was constantly buying used automobiles which were duly registered and licensed in the Commonwealth; that prior to May 16, 1936 (the effective date of chapter 67, 1936 Acts of the General Assembly), it was provided by chapter 90, section 2, 1920 Acts, as amended by chapter 109, 1926 Acts, that:

"Before the owner or operator of an automobile shall operate or be permitted to operate same, or shall permit the operation of same upon any public highway, such owner shall register with the commission through the clerk in the county in which he resides or in the county in which the automobile is to be operated, making application for such registration to the clerk of such county on a blank to be furnished by the commission through the clerk, which application shall be accompanied by a bill of sale if the application be for registration of a new car, or by exhibiting the owner's registration receipt if such automobile has theretofore been registered, and thereafter he shall register his automobile on or before the first day of January of each and every year."

That this one section 2739g-2 (a), Kentucky Statutes (Baldwin's 1930 Revision), providing for the registration of automobiles as set out supra, was amended by chapter 67, supra, which provided as follows:

"That Section two thousand seven hundred thirty-nine g-2 (2739g-2) (A) be amended by striking therefrom the words 'thereafter he shall register his automobile on or before the first day of January of each and every year' and adding in lieu thereof, 'thereafter he shall register his automobile on or before the first day of March of each and every year so that when said Section is amended it shall read, as follows:

" 'Before the owner or operator of an automobile shall operate or be permitted to operate same, or shall permit the operation of same upon any public highway, such owner shall register with the commission through the clerk in the county in which he resides or in the county in which the automobile is to be operated, making application for such registration to the clerk of such county on a blank to be furnished by the commission through the clerk, which application shall be accompanied by a bill of sale if the application be for registration of a new car, or by exhibiting the owner's registration receipt if such automobile has heretofore been registered, and thereafter he shall register his automobile on or before the first day of March of each and every year.' "

Further, the petition alleged that by section 3(d), chapter 90, 1920 Acts of the General Assembly, as amended by chapter 80, section 3, 1924 Acts, now compiled as section 2739g-13, Kentucky Statutes (Baldwin's 1936 Revision), it is provided that:

"Whenever an automobile that has been previously registered changes ownership, the registration plates shall remain upon such automobile as a part thereof until the expiration of the registration year * * *."

The petition further alleged that notwithstanding the aforesaid act and act as amended, the defendant, acting pursuant to the advice of the Attorney General of the Commonwealth, has instructed the plaintiff that:

"(1) As to cars the title of which the plaintiff has acquired on or before December 31st, plaintiff may operate but may not transfer title to those cars between December 31st and March 1st without re-registration.

"(2) As to cars the title of which the plaintiff acquires after December 31st the plaintiff may neither operate nor transfer title between December 31st and March 1st without re-registering those cars."

The petition further sets out that by reason of these instructions given, a controversy has arisen between the parties as to the proper construction of the provisions of the aforesaid chapter 67, 1936 Acts.

Plaintiff contends that the registration year for automobiles was thereby changed from a twelve month period beginning January 1 to a twelve month period beginning March 1 of each year, after May 16, 1936, the effective date of said act.

Further, it alleges that by the express terms of the statute aforesaid, and by the terms thereof as same were contemporaneously construed both by plaintiff and defendant, "the owner of an automobile previously registered may operate an automobile upon the highways of the Commonwealth without re-registering same until March 1," but that notwithstanding the specific terms of the statute and such contemporaneous construction placed upon them, the defendant now so construes the terms thereof as to contend that the owner of such previously registered automobile may not legally transfer

title thereto after January 1 and before March 1 until said car has been re-registered. As a second point here in controversy between the parties, the plaintiff alleges that even conceding the construction of the statute involved is such as defendant contends, yet the right created by the 1936 amendment (chapter 67) allowing the owner of an automobile an extension of two months upon his registration period "would be a right that must be transferable and could not be granted in such a manner as not to be subject to transfer."

Further, the petition alleged that plaintiff is now the owner of a large number of used automobiles, all of which have been previously registered in the Commonwealth, and that if required to re-register said automobiles before March 1, 1939, plaintiff will be substantially damaged and that, by reason of the defendant's interpretation put upon the acts aforesaid, an actual controversy has arisen and now exists between the parties hereto, and concludes with the prayer that:

"1. The Court determine and declare what period constitutes the registration year for automobiles in the Commonwealth * * * under the Acts aforesaid both for purposes of operation and transfer.

"2. The Court determine and declare if it believes that the registration year was not changed by the amendment of 1936, but that the amendment was merely to grant an extension to operators of automobiles, and whether or not that extension right be transferable; and

"3. Whether or not plaintiff may legally transfer used automobiles previously registered in the Commonwealth * * * during the months of January and February, 1939, without re-registering said automobiles with the Division of Motor Vehicles."

To this petition a general demurrer was filed. Whereupon, the cause being submitted upon the pleadings, it was adjudged that the evident purpose of chapter 67, 1936 Acts, amending Section 2739g-2 (a), Kentucky Statutes, 1930 Revision, was to change the registration date of automobiles from January 1 to March 1 of each year and that the registration year, since the effective date of the Act, was changed from a year beginning and ending January 1 to a year beginning and ending March 1 of each respective year thereafter. Fur-

ther, it was adjudged, when applying such adjudged con-
struction of chapter 67 here involved to ascertain the
rights of the parties under the amended statute, that:

> "Plaintiff, Louisville Motors, Incorporated, has
> until March 1, 1939, to re-register the automobiles
> which it now owns, all of which have been previ-
> ously registered in the Commonwealth * * * for the
> preceding year and this right extends to plaintiff
> for purposes of operation and transfer of said auto-
> mobiles as it would to any individual who continued
> to operate his automobile for his personal use until
> March 1, 1939."

The Commissioner of Revenue, contending that the
learned trial court's construction of this amendatory
section of the 1936 Acts (section 2739g-2a) and its re-
sulting effect upon chapter 88b, Kentucky Statutes
(1936 Revision), consisting of sections 2739g-1 to 2739g-
102, inclusive, dealing with the general subject of motor
vehicles, is erroneous, has appealed.

Such being the record before us, it is obvious that
there is here presented for our determination but the
one question as to the propriety of the construction of
the terms of this statute made by the trial court and its
effect, as declared, upon the provisions of the compre-
hensive general Motor Vehicle Act, now sections 2739g-1
to 102 inclusive, Kentucky Statutes (1936 Revision).

In entering upon our consideration of this question,
it is appropriate that we first look to the long settled
rules of statutory construction in order that we may be
thereby guided and advised as to the matters that may
be properly considered in determining what was the leg-
islative mind and purpose when enacting this statute,
chapter 67.

We are by these rules advised that, in construing
an act both under the common law and the law as it to-
day exists in this jurisdiction, the court has the right to
look to the evil the Legislature sought to correct or rem-
edy by enacting it and to the "historical setting and
conditions out of which said act was promulgated."

To such effect many most impressive authorities,
found in the text of many jurists as well as in the re-
peated enunciation of this and sister courts, are alike
cited and quoted by each of the learned counsel.

To such end appellant's counsel cites "The Com-

mon Law'' by Justice Oliver Wendell Holmes, from which is quoted the following excerpt:

"The life of the law has not been logic; it has been experience. The felt necessities of the time, the prevalent moral and political theories, intuitions of public policy, avowed or unconscious, even the prejudices which judges share with their fellow men, have had a good deal more to do than the syllogism in determining the rules by which men should be governed. The law embodies the story of a nation's development through many centuries, and it cannot be dealt with as if it contained only the axioms and corollaries of a book of mathematics.''

Also, the late Justice Benjamin N. Cardozo, in his work, ''The Nature of the Judicial Process,'' said on page 32 thereof:

"Holmes has told us in a sentence which is now classic that 'the life of the law has not been logic; it has been experience.' But Holmes did not tell us that logic is to be ignored when experience is silent.''

Again, in Lewis' ''Sutherland Statutory Construction,'' Volume 2, page 606, section 310, it is said:

"The courts will take judicial notice of whatever may affect the validity or meaning of a statute. They will take notice of events generally known within their jurisdiction, or the history of legislation, and of the reasons urged for and against the passage of a law. They will inform themselves of facts which may affect a statute; for example, the precise time when it was approved, to determine its existence, commencement or any other fact for like purpose. They will take notice of the terms in which an act was passed, though they differ from those of the officially published statutes. No issue by pleading can be made by the parties involving such facts to be tried by evidence. The judges make the proper inquiry to inform themselves in the best way they can.''

In the case of Sams, etc. v. Sams' Adm'r, 85 Ky. 396, 3 S. W. 593, 594, Chief Justice Pryor, in announcing this rule and speaking of the many collateral matters

which might helpfully and appropriately be taken into consideration by the court in construing a statute, said:

"It is a well-settled rule of construction that the letter of a statute will not be followed where it leads to an absurd conclusion; but, on the contrary, *the reason for the enactment must enter into its interpretation, so as to determine what was intended to be accomplished by it.*" (Italics ours).

Again, in Neutzel v. Ryans, 184 Ky. 292, 211 S. W. 852, 854, the court said:

"The purpose is to give effect to the legislative intent. *The will of the Legislature, not its words, are the law.*

"The object sought to be attained by the enactment of a statute being ascertained, it furnishes a most excellent aid in determining whether or not the words used convey the meaning intended by the Legislature. When they do not, and from the context, the attendant circumstances, and the object sought to be accomplished, this fact is made to appear, then the words may be modified consistent with the legislative intent." (Italics ours.)

In the case of Gillis et al. v. Anderson et al., 256 Ky. 472, 76 S. W. (2d) 279, 283, we said:

"But in this world of practical affairs, a rule of law must be given a practical construction."

And again in the case of Felts v. Edwards, etc., 181 Ky. 287, 204 S. W. 145, 146, to the same effect we said:

"To ascertain the intention of the Legislature it is proper to look to the purpose which it had in view in enacting the statute, the subject-matter, and the entire context of the statute and the consequences of its enactment."

Keeping in mind these rules governing statutory construction, let us now direct our attention to the determination of the question here before us, as to whether the trial court's construction of chapter 67, supra, as being effective to change the registration year of automobiles from January 1 to March 1 of each year, and not merely to grant an extension of time to the owners in which to register same, was the proper one.

In harmony with the directions given by these

rules, counsel for appellant asks the court to inquire into and consider the matter of what were the conditions that confronted the Legislature at the time of the enactment of this statute and what was the history or economic background of the Commonwealth, leading up to its 1936 situation, in consideration of which this amendatory chapter 67, remedial of the public stress, was enacted.

It developed that under the requirements of section 2739g-2 (a), Kentucky Statutes (1930 Revision), great hardships resulted to owners of automobiles, in that they were unable to procure license plates for their cars on or before January of each year and as a result of which they were left without the right to operate their cars or if they did operate them, they subjected themselves to the payment of penalties for operating them without their license plates.

To relieve this general injustice it was recognized was being put upon such car owners, the successive governors of the Commonwealth, without legal warrant or statutory authority therefor, proceeded to issue proclamations extending the time, from January 1, in which they might register or procure license plates, the last of such proclamations being that of Governor Laffoon, extending a grace period for the obtention of car licenses to February 28, 1934.

Also it is to be noted that in 1936 the Commonwealth was only partially emerging from this general depression of several years' duration and that, as a heritage of that depression, many demands were being made upon it to enter upon new remedial activities, which called for large and increased appropriations, even though the Commonwealth was then indebted in an amount totalling many millions, which had slowly accumulated over a period of twenty-five years from continuously recurring yearly deficits; that, as the State Treasurer advised the Governor, on January 6, 1936, the outstanding state warrants totalled $25,084,643.17.

Further, the 1936 General Assembly were besieged and confronted with demands that they enact an old Age Pension Law, providing for the enrollment, as state pensioners, of some 40,000 persons and also a Social Security Statute, in the form of unemployment compensation, the enactment of which laws would require

the Legislature to make an annual appropriation unprecedented in its amount.

Further, it is a matter of common knowledge, of which the court may here take judicial notice as bearing upon the intent of the Legislature in the enactment of this amendatory chapter 67, that the business of the Commonwealth, whatever its character, had but partially recovered from the depression, that those engaged therein were not in a financial condition to meet increased taxation and that, by reason of such conditions obtaining in the Commonwealth, the Legislature was feverishly seeking every source of revenue that could be reached by taxation, with which to satisfy these newly legislated liabilities and keep its increased governmental expenditures within the limits of the yearly revenue thereby provided.

The depressed financial and economic condition of the Commonwealth, with which the Legislature was confronted, required it to enact revenue legislation aimed at remedying this condition, and accordingly this chapter 67, Acts of the 1936 Session, was enacted, amending, as stated supra, the one section 2739g-2 (a) of the earlier comprehensive Motor Vehicle Law, chapter 90, 1920 Acts, as same was amended by the Acts of 1924 and 1926.

In such a situation, in undertaking to determine the intent of the Legislature in the enactment of this amendatory chapter 67 and in construing same in harmony with the will, intention and purpose of the Legislature in enacting that chapter, in the light of these conditions confronting them, it is proper that we should heed the rule of construction as announced in the Sams case, supra, that "the reason for the enactment must enter into its interpretation, so as to determine what was intended to be accomplished by it" and also, as further enjoined in the Gillis case, supra, that in interpreting this act, we must give it "a practical construction in this world of practical affairs."

Recognizing that the general situation confronting the Legislature was as stated supra, and that in attempting to relieve and remedy the acute stress and strain of that hour it enacted legislation, subjecting all forms and kinds of property to a tax, in order thereby to increase the Commonwealth's revenue, can it be pre-

sumed that in the enactment of this measure it thereby intended to so amend the then existing section 2739g-2 (a), Kentucky Statutes (1930 Revision), providing for the payment by the owners of automobiles registration or license taxes thereon, in such a way as would reduce the revenue payable to the Commonwealth thereunder?

To affirm the judgment of the circuit court, holding (as the amendment was construed by it) that the Legislature thereby intended to change the registration year of January 1 to January 1 of the following year, for more than 400,000 motor vehicles, to a differently beginning and ending year of March 1 of the year following and thereby create a space of two months between such two registration dates, in which the owners of automobiles would not be required to pay any registration or license tax upon their automobiles, and to such extent reducing the quota of revenue to be derived from the car tax, would be to impute to the Legislature the intention of doing an impractical thing or "a vain and foolish thing" which, as stated in the case of County Board of Education of Daviess County v. Fiscal Court, etc. 221 Ky. 106, 298 S. W. 185, "will not be presumed."

Entertaining such view, for the reason stated, that it was the intention of the Legislature, at its 1936 session, to enact legislation which would be productive of an increase of revenue, rather than a reduction of it and the language of chapter 67, alleged providing for the change of the registration day from January 1 of each year to March 1 of each year, being susceptible to the equally reasonable construction as that adjudged by the trial court, that the registration year was not changed thereby, it is our opinion that it was the intention of the Legislature, in using such language, to give to the car owners a period of grace in which to register their cars, which period of grace was to extend to March 1 of each year.

Such construction given to the title and body of the Act makes it unnecessary to create a period of two months in which no cars are required to be registered in the Commonwealth, as is the effect of the learned trial court's judgment.

Also, a second reason for so interpreting the Act is the fact that the contemporaneous construction of the Act by the public since its enactment, covering a period

of some two years, has been in harmony with the construction given the Act by the Revenue Department, except for the complaint it appears has here arisen from dealers handling second hand cars, who seek the temporary advantage of procuring a change in this construction given the Act, which would continue for only the brief period of the two months intervening between January 1 and March 1.

Also, we are of the opinion that had the Legislature meant and intended that this amendatory Act should have the effect upon the existing general Motor Vehicle Law as the appellee contends for, of creating the intervening period of non-revenue producing months (January and February), it would have gone further and amended at the same time other provisions of the general Motor Vehicle Act inconsistent with the provisions of chapter 67, as construed by the trial court.

We are, therefore, led to conclude that the construction given chapter 67 by the trial court, as effecting such a change in the registration year as to make it begin and end on March 1 of each succeeding year, rather than on the first of each calendar year, was erroneous and that the proper construction of said chapter is that it, as was meant and intended by the Legislature, merely extends to automobile owners a grace period of two months, from January 1 to March 1, in which to register their cars after the termination of the registration year on January 1.

Judgment reversed.