### HAMILTON et al.
### v.
### INTERNATIONAL UNION OF OPERATING ENGINEERS et al.

Court of Appeals of Kentucky.

Dec. 4, 1953.

A. Scott Hamilton, Louisville, J. D. Buckman, Atty. Gen., H. D. Reed, Jr., Asst. Atty. Gen., for appellants.

Hubert T. Willis, John L. Richardson, Jr., Louisville, for appellees.

CULLEN, Commissioner.

The International Union of Operating Engineers brought this action against the Commonwealth's attorney of Jefferson County and the Attorney General of Kentucky, seeking a declaration of rights concerning the meaning and validity of Chapter 164 of the Acts of 1952 KRS 336.170, which reads as follows:

"Section 1. It shall be unlawful for any national or international labor organization having one hundred or more members in good standing who reside or work in Kentucky not to have at all times one or more duly chartered and established local or subsidiary organizations in this State.

"Section 2. Any national or international labor organization which violates section 1 of this Act, shall for each offense, be fined not less than one thousand dollars nor more than ten thousand dollars."

The circuit court adjudged that the Union was complying with the Act, as interpreted by the court, and therefore did not pass upon the question of whether the Act would be constitutional if so interpreted as to place the Union in the status of noncompliance. The Commonwealth's attorney and the Attorney General have appealed.

The first question before us is whether the Union is complying with the Act, as correctly construed. If that question is answered in the negative, we must determine whether the Act as we construe it, is valid and enforceable.

The Union has a large number of members residing and working in the vicinity of Paducah, Kentucky. These workers are under the jurisdiction of Local No. 181, which has its headquarters at Evansville, Indiana, but which has branch offices at Louisville and Paducah. Local 181 has jurisdiction over stationary, hoisting, and portable engineers residing or working in southern Indiana and in all counties of Kentucky except four northern counties. These four counties are under the jurisdiction of Local No. 18, which has its headquarters in Cincinnati, Ohio. The Union also has Local No. 930, with headquarters in Louisville, which has jurisdiction only over stationary engineers residing or working in the Louisville area.

The lower court found that Local No. 930 was a local chartered and established in this state, within the meaning of the 1952 Act, and therefore adjudged that the Union, by maintaining this local, was complying with the Act. The Union contends that not only does Local No. 930 constitute a compliance with the Act, but that the branch offices of Local No. 181, in Paducah and Louisville, constitute "subsidiary organizations" in Kentucky within the meaning of the Act. The Commonwealth's attorney and the Attorney General maintain that a reasonable interpretation of the Act requires the Union to establish in Kentucky one or more autonomous locals of such character that each Kentucky member of the union could have membership in a Kentucky local which would have jurisdiction to represent its membership in labor matters in Kentucky.

■ We have no difficulty in concluding that the branch offices of Local No. 181 in Paducah and Louisville are not "subsidiary organizations" within the meaning of the statute, for the simple reason that they are not "organizations". We think it is clear that the word "organization" as used in the statute contemplates an organizational unit with a governmental structure of its own— something that is capable of some degree of independent existence as an entity.

■ Whether Local No. 930 constitutes a compliance with the Act is a question somewhat more troublesome. However, it is our opinion that a reasonable construction of the Act requires something more than is supplied by this local.

■■ As we construe the Act, when it requires a "local" organization "in this State" it means not merely a "local" from the standpoint of union terminology and custom, but an organization that is *localized* in Kentucky. And we think the Act means that there must be a local organization available for all members of the union in Kentucky.

■ As has been said, the Court is not required to act in a vacuum. We are entitled to recognize matters of common knowledge, and to give consideration to contemporaneous circumstances throwing light on the legislature's intent. Baker v. White, 251 Ky. 691, 65 S.W.2d 1022. The court may take judicial notice of the historical setting and conditions out of which an Act was promulgated. Martin v. Louisville Motors, 276 Ky. 696, 697, 125 S.W.2d 241. It may take notice of the economic conditions existing at the time of enactment of a statute. Grieb v. National Bank of Ky.'s Receiver, 252 Ky. 753, 68 S.W.2d 21.

In Green v. Moore, 281 Ky. 305, 135 S.W. 2d 682, 683, we said:

"In the search for the legislative will, we start with the pertinent conditions existing when the law was enacted, with their background and development, and look toward the object intended to be reached or accomplished. * * *

Those attendant circumstances, the context of the act and its consequences are controlling, even though it may be necessary to modify the language used in order to make it consistent. * * *"

■ Other pertinent rules of construction are: Statutes must be given a practical construction. Commonwealth v. Randolph, 277 Ky. 724, 127 S.W.2d 398; Reeves v. Fidelity & Columbia Trust Co., 293 Ky. 544, 169 S.W.2d 621; a statute will not be construed so as to lead to an absurd conclusion. Reeves v. Fidelity & Columbia Trust Co., 293 Ky. 544, 169 S.W. 2d 621; Swift v. Southeastern Greyhound Lines, 294 Ky. 137, 171 S.W.2d 49; it will not be presumed that the legislature intended a useless or futile thing. Washburn v. Paducah Newspapers, 275 Ky. 527, 121 S.W.2d 911.

The situation that existed in the Paducah area, with respect to foreign control of union affairs, was a matter of common knowledge at the time of enactment of the statute here in question. It had received wide newspaper publicity and was a subject of general public discussion. In addition, some of the problems connected with this situation were brought before this Court in International Union of Operating Engineers v. J. A. Jones Const. Co., Ky., 240 S.W.2d 49, and in International Union of Operating Engineers v. Bryan, Ky., 255 S.W.2d 471. The big issue was local representation and voice in union affairs.

■ To so construe the 1952 Act as contended by the union would be to render the Act completely useless and futile. No conceivable purpose could be accomplished by requiring a union merely to maintain a local in one small area of Kentucky, with its membership limited to those who worked in one branch of the craft in that area. The obvious purpose of the Act was to require that all members of the union have the opportunity for membership in a Kentucky local or subsidiary organization that would have jurisdiction to represent them in Kentucky. Since the Act refers to "one or more" such organizations, it appears that

the union might establish one local with state-wide jurisdiction, or several locals which, collectively, would have state-wide jurisdiction. To so construe the Act does no violence to its language, and we do so construe it.

 The union contends that, in providing a penalty for "each offense," the Act does not define with sufficient certainty what constitutes an offense, and the Act therefore is void for uncertainty. It is true that the Act itself does not define what constitutes "each" offense, but it does make clear what constitutes a *violation,* and the rule governing the number of penalties that may be imposed, and the places in which prosecutions may be maintained, is well established by our case law. It is clear from the Act that if a national or international union carries on activities in this state, through its locals and membership, without having the kind of local organizations required by the Act, it has committed a violation of the Act. See International Union of Operating Engineers v. J. A. Jones Construction Co., Ky., 240 S.W.2d 49. Under the rule defined in International Harvester Co. of America v. Commonwealth, 144 Ky. 403, 138 S.W. 248, there may be one prosecution, for the period covered by the indictment, in each county in which the offense is committed. The claim of uncertainty cannot be maintained.

 The union further maintains that Locals Nos. 18 and 181 have property rights in or by virtue of their present membership, and the Act will deprive them of these property rights without due process of law. As we interpret the Act, it does not of itself deprive these locals of any of their membership. It merely requires that one or more Kentucky locals be established to which Kentucky workers will have the privilege of transferring their membership, if they so desire. Certainly the due process

clause was not designed to protect monopolies.

 It also is argued that the Act is not a valid exercise of the police power, because there is no public evil or abuse sought to be remedied, but only the conferring of private benefits. We think that the public has a protectable interest in the accessibility of labor organizations to the processes of law of this state. Furthermore, it has long been recognized that the protection of labor is a proper objective for exercise of the police power, since the economic interests of the public are directly and substantially affected by labor disputes. It would seem that the public should have as great an interest in the protection of labor from labor, as in the protection of labor from capital.

 Finally, it is contended that the 1952 Act invades the constitutional freedoms of speech and assembly, and conflicts with federal labor laws guaranteeing freedom of choice in the selection of bargaining agents. We find no basis for these arguments. The Act does not purport in any way to restrict the activities of any labor organization, or to impose conditions upon the free exercise of the rights of speech and assembly. It does not limit any worker in the selection of a bargaining agent of his own choice. Locals Nos. 18 and 181 may continue to function in Kentucky just as they have in the past, the only restriction being that a union member cannot be *compelled by the union* to choose any of them as his bargaining agent, but must be given the choice of selecting a Kentucky local as his bargaining agent. As we view it, the Act promotes, rather than impedes, the exercise of those rights guaranteed by the Constitution and by the federal labor laws.

The judgment is reversed, with directions to enter a judgment in conformity with this opinion.