**BOARD OF REGISTRATION COMMIS- SIONERS et al., Appellants,**

**v.**

**James HALLAHAN, County Clerk, et al., Appellees.**

Court of Appeals of Kentucky.

Sept. 27, 1972.

James E. Thornberry, Louisville, for appellants.

Boyce F. Martin, Jr., First Asst. Jefferson County Atty., Louisville, for appellee James Hallahan, Jefferson County Court Clerk.

Thomas C. Carroll, Louisville, for appellee Democratic County Executive Committee.

Cecil Davenport, Louisville, for appellee Republican County Executive Committee.

Ed W. Hancock, Atty. Gen., Walter C. Herdman, Asst. Atty. Gen., Frankfort, for appellees State Board of Elections.

CULLEN, Commissioner.

By Chapters 188 and 320 of the Acts of the 1972 Regular Session, and by House Bill No. 5 enacted at the First Extraordinary Session of 1972, the Kentucky Gener-

al Assembly made comprehensive changes in the election laws, including the laws relating to registration of voters. By virtue of specific designations of effective dates, the major revisions made by the three Acts will not become effective until December 1, 1972 (after the November general election). However, some of the provisions of Chapter 320 and of House Bill No. 5 became effective on June 16 and will be operative only until December 1.

Prior to the enactment of the 1972 legislation, KRS 117.620 provided that a voter could register by appearing in person at a designated office or branch office.[1] Among the various amendments made by Chapter 320 of the 1972 Acts was an amendment of KRS 117.620 to provide that a voter "may register by absentee application, or" by appearing at the designated office or branch office. Chapter 5 of the Acts of the Extraordinary Session also amended KRS 117.620 in some respects, but it made no change as to the above language. KRS 117.620 as amended will continue in force only until December 1, 1972, following which it will be superseded by KRS 128.040 (created by Chapter 188 of the 1972 Acts and amended by Chapter 5 of the Extraordinary Session), which provides for registration in person *or by mail,* following a general state-wide re-registration of all voters.

The representatives of both major party organizations in Jefferson County (and, it appears, elsewhere in the state), the Attorney-General, the Secretary of State, and the State Board of Election Commissioners all interpreted KRS 117.620 in its amended form as authorizing any voter to register simply by filling out the application form provided for in KRS 126.160 (as amended by Chapter 320 of the Acts of 1972) and causing it to be delivered to the appropriate registration office, without a personal appearance by the voter at the office. A large number of registrations were made in that manner during the recent summer.

Believing that interpretation to be erroneous, the Board of Registration Commissioners of Louisville brought the instant action, alleging that the proper construction of KRS 117.620 is that the only persons entitled to register by "absentee application" are those who are absent from their places of residence at the time of making application for registration and who will also be absent voters at the next election; in other words, that absentee registration is solely for absentee voters.

The circuit court rejected the registration board's interpretation and entered judgment adopting the construction permitting any qualified voter to register by application without personally appearing at the registration office or branch office. The registration board has appealed.

The issue is solely one of interpretation of a statute that has application only as to a limited period of less than five months. We conceive that no useful purpose would be served by setting forth in this opinion a detailed history and analysis of the legislation involved. The question simply is: What did the legislature intend? We believe the answer can better be found in a practical evaluation of the circumstances than in an exercise in semantics. Baker v. White, 251 Ky. 691, 65 S.W.2d 1022; Grieb v. National Bank of Kentucky's Receiver, 252 Ky. 753, 68 S.W.2d 21; Martin v. Louisville Motors, 276 Ky. 696, 125 S. W.2d 241; Green v. Moore, 281 Ky. 305, 135 S.W.2d 682; Hamilton v. International Union of Operating Engineers, Ky., 262 S. W.2d 695.

The primary circumstance was the existence of a compulsion to comply with the Voting Rights Act of 1965 (79 Stat. 437; 42 U.S.C. § 1973 et seq.) as amended in 1970 (Public Law 91–285; 84 Stat. 314), and with Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274. The climate was one favoring liberalization of registration requirements. A complete revision of

---

[1]. Absentee registration by persons in military service was provided for, however, in KRS Chapter 126.

the election laws was adopted but its effective date was postponed until after the regular 1972 election, apparently because it was felt that a period of adjustment would be required before the new law was applied to an election, and because time was needed to put the new law into operation. For example, the new law provided for a complete re-registration of voters, which would take a substantial period of time to accomplish.

In the meantime, pending the taking effect of the comprehensive revision, the legislature at the regular 1972 session was concerned with accomplishing some liberalization for the 1972 presidential election to comply with the Voting Rights Act, and when Dunn v. Blumstein was decided the legislature was called into the extraordinary session to make further liberalizations to comply with that decision. In accomplishing these liberalizations there was no reason for the legislature to continue, pending the 1972 election, the requirement of registration by personal appearance at the registration office. Registration by application forwarded to the office could be permitted without any implementation problems or time-shortage obstacles. No evil has been suggested that could derive from so doing.

■ It is to be considered, therefore, that every inducement was towards facilitating the registration process and encouraging the registration of voters. So when the legislature, in Chapter 320 of the 1972 Acts, authorized *any legal voter* to register by absentee application, the indications are strong that the intent was to permit registration by forwarded application for any voter and not merely those persons who would be absent voters. The law previously had authorized "absent registrations" by absent voters in military service, without any mention of that authorization in KRS 117.620, so when the category of permissible absent voters was enlarged in 1972 there was no need to amend KRS 117.620 to mention it.

There appear to be only two possible reasons that could have prompted the legislature to amend KRS 117.620. One would be simply to call attention to laws under which an absent voter could register by mailed application; the other would be to grant a right of registration by forwarded application to all voters. The latter reason is so much more likely that we are convinced it was the reason by which the legislature acted.

■ The construction so placed on the amendment results in the qualifying of a large number of voters who registered by forwarded application in accordance with the construction made by practically all concerned public and party officers. The result is in the public interest, in which, of course, the legislature always is presumed to act. A contrary construction, disfranchising those voters, is not compelled to be reached. Election statutes should be construed liberally in favor of furthering the right of suffrage. 25 Am.Jur.2d, Elections, sec. 5, p. 695. This includes registration statutes, which will be construed to give the electors the fullest opportunity to vote consistent with reasonable precautions against fraud. 25 Am.Jur.2d, Elections, sec. 97, p. 785.

The judgment is affirmed.

STEINFELD, C. J., and MILLIKEN, NEIKIRK, and PALMORE, JJ., concur.

REED, EDWARD P. HILL, Jr., and OSBORNE, JJ., dissent.

PALMORE, Justice (concurring).

Those of us who support the majority opinion are fully aware that from a purely technical standpoint we could easily adopt the opposite view. And if the correct result were really obvious we would not hesitate to do so. That it is not so free of doubt, however, is attested by the fact that not only the very competent lawyers representing the two major political parties, but also the Attorney General, gave

the statutes the same contemporaneous construction. There is no suggestion that these people arrived at their conclusions through stupidity, collusion or in bad faith. I do not see in it any power play by the mighty at the expense of some nebulous minority or minorities. As a matter of fact, in a day and time in which the voice of minority interests is heard loudest, given the most attentive ear, and accorded the greatest deference, none has lifted a finger to participate in this case.

It seems to me that law exists for one purpose, which is to facilitate the orderly and peaceful affairs of mankind. Sound jurisprudence always flows in that direction, and seeks not to obstruct but to help. In this instance many people have acted in good faith in reliance upon the construction placed upon the statutes in question by the constituted officials of the state and county as well as the major political parties. The circuit court has found that construction to be correct. There is no valid object to be gained by upsetting it, no great principle to be damaged or sacrificed by sustaining it. The more often law and common sense coincide, the better. I think the majority opinion reflects a good and perfectly sound jurisprudence.

REED, Justice (dissenting).

Although I am unable to agree with the majority opinion, it would appear that the result reached will please most people directly affected by the decision. I fear, however, that such transient satisfaction is achieved for a price that is excessive. I therefore feel compelled to respectfully dissent.

The majority opinion undertakes to be an example of legal realism but what is realistic depends upon the eye of the beholder.

The basic premise of the majority opinion is that the extraneous circumstances must control. There is a significant reluctance to discuss what the controlling statute says. I would always suppose that if the words of a statute are not ambiguous, contemporaneous construction cannot be resorted to. It would appear that contemporaneous construction has been used here to dictate the result despite the unambiguous language of the statutes. That course of conduct is all the more bewildering when some of my brethren on the majority have formerly advocated the proposition that when a court speaks of ascertaining "legislative intent" it is pursuing a will-o'-the-wisp. According to their formerly adopted position, courts must take the language of the legislature as it is written and then pronounce what legal consequences shall flow from the use of that language.

The authority cited that a registration statute should be construed to give electors the fullest opportunity to vote consistent with reasonable precautions against fraud is a nice statement in the abstract. The same authority also declares that the wisdom and efficiency of a law providing for the registration of voters pertain to matters of policy for which the legislature alone is responsible, 25 Am.Jur.2d, Elections, Sec. 99, p. 785. Whether the statute has application for a limited period of time and whether the contemporaneous construction ignoring its language was agreed to by the controlling organizations of the two major political parties are matters of little import, unless the court intends to hold that if powerful political organizations agree they may ignore statutory language when citizens in general are not afforded that right. If this be legal realism, then minority interests have very little opportunity for protection and contemporaneous construction by sufficiently powerful and representative adversary forces may effectively repeal legislative language with judicial approval. The majority opinion says that no evil has been suggested that could be derived from placing the stamp of approval upon what has been done. I suggest the evil lies in extending a right to powerful segments of the social order that cannot be extended to others by the very nature of the system of government under which we operate.

In 1964 this court said:

"We believe that registration would be considered by most people as a part of the voting process. In the great majority of instances the person who would seek absentee registration would also be an absentee voter." Hallahan v. Cranfill, Ky., 383 S.W.2d 374 (1964).

That opinion considered the provisions for absentee registration enacted in 1964. Absentee registration was there confined to members of the "United States Service." Since the majority opinion does not see fit to quote the language of the legislative act that it concedes is the subject of the appeal, I will not dwell upon the matter. The reason for the reluctance of the majority is obvious. I will, nevertheless, quote a few examples of the language used.

KRS 117.620(1):

"Any person possessing the qualifications for registration as a legal voter may register by absentee application, or appear before the county clerk of the county of his residence or at the temporary branch offices authorized by the county board of registration and purgation . . . ."

Another example of language from section 5 of Chapter 320 of the 1972 Acts of the General Assembly;

"Applications for absent voter's ballot and absent voter's registration shall be signed and sworn to by the absent voter . . . ."

The statutory application form is headed: "Application for Absent Ballot and Absent Registration." Section 7 of the same act:

"The Secretary of State shall also cause to be prepared and printed an appropriate number of forms for application for absent voter's ballots, absentee registration and of instructions for absent voters. . . ."

In my judgment, if any credence whatever is given to the words "absent" or "absentee" so far as the process of registration is concerned, a liberal construction in the interest of enfranchising more votes could stretch no farther than to say, under the repeated use of the language, a voter in order to register does not have to be restricted to the status of an absent voter but he must be absent from the county wherein the registration office is located during the prescribed period of registration. The majority has simply struck the words "absent" or "absentee" from the concerned statute. I could have better endured the methodology of reaching the result if the majority would have construed the words "absent" or "absentee" to mean one who does not choose to go to the several places provided for registration during this period. Of course, that would have been contrary to the entire history of the use of the word in statutes regulating the practice of registration and voting. But the majority commendably does not adopt such sophistry, it simply refuses to face the plain language of the statute. I, therefore, respectfully dissent.

EDWARD P. HILL, Jr., and OSBORNE, JJ., join in this dissent.